# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**MARTIN VASQUEZ ARROYO,**

                      **Petitioner,**

       v.                              CASE NO. 15-3234-SAC

**REX PRYOR,**

                      **Respondent.**

## MEMORANDUM AND ORDER

This matter is a consolidated action arising from three habeas corpus petitions filed under 28 U.S.C. § 2254 by the petitioner.

By its order entered on September 29, 2016, the Court dismissed petitioner's claims of actual innocence and directed him to file an amended petition that contained only claims that had been exhausted by presentation to the highest state court (Doc. #8). The matter is now before the Court on the amended petition (Doc. #9), two supplements to the petition (Docs. #10 and #16), and five motions for court orders (Docs. #11, #12, #13, #14, and #15).

### Background

Petitioner was convicted of three counts of first-degree murder, one count of aggravated robbery, one count of felony theft, and two counts of misdemeanor theft. *State v. Vasquez*, 194 P.3d 563 (Kan. 2008).

He sought relief both by a direct appeal, *id.*, and in an action filed under K.S.A. 60-1507. *Vasquez v. State*, 331 P.3d 833 (Table), 2014 WL 4080025 (Aug. 15, 2014), *rev. denied*, July 21, 2015.

The case against petitioner was circumstantial but compelling. The Kansas Supreme Court summarized the case as follows:

On December 12, 1998, the bodies of Vasquez' wife Robin; Robin's father, Howard Franks; and Tom Dinkel were discovered in Robin's home in Kinsley, Kansas. Each victim had been incapacitated by blows or gunshots, then executed by means of a final gunshot. Investigators recovered 9 mm bullet casings at the scene, and 9 mm bullets were recovered from the bodies. 'Robin I Love You' was written on a wall at the scene. Although Dinkel's truck had been parked in the driveway in front of Robin's house the night before, it was no longer there the morning the bodies were found.

Mike Sebes, who had employed Vasquez, discovered that his 9 mm Firestar handgun was gone when he looked for it on December 14.

Dinkel's truck was found in Juarez, Mexico, in late December 1998. Dinkel's wallet was discovered along Highway 183 south of Kinsley in February 1999. Sebes' 9 mm Firestar was found in El Paso, Texas, in late December 2002.

[…]

Vasquez was arrested in Mexico on September 3, 2003; gave statements to police; and made his first appearance before the district court on October 19, 2004.

[…]

At trial, the State's evidence covered the following additional information:

Vasquez and Robin were married in 1996, and their union swiftly deteriorated. Vasquez drank to excess; by mid-1998, Robin was seeking a divorce.

Vasquez worked for Mike and Ron Sebes in their Kinsley farming operation during the summer of 1998. In mid-October, Vasquez left Kansas for several months to harvest crops on his own land in Mexico. While in Mexico, Vasquez contacted Robin, who told him she did not want him to return.

Vasquez nevertheless returned to Kinsley in the first week of December 1998. Robin had moved his belongings to the home of Vasquez' sister, Maria, who lived across the street from Robin; and Vasquez stayed at Maria's after his return from Mexico.

Robin had begun seeing Dinkel, and Vasquez became aware of this fact. According to Vasquez' friend, Nathan Bartley, Vasquez was upset by his wife's relationship with Dinkel and 'wanted to kick Dinkel's ass.'

Around December 5, 1998, Vasquez attempted to borrow a gun from Bartley for the stated purpose of going hunting, although Bartley had never know Vasquez to hunt. Vasquez asked Bartley to take him to the store for ammunition. When Bartley was unable to do so, Vasquez went to the store with his sister and purchased 9 mm bullets.

On December 11, 1998, Robin told Police Officer Curtis William Starks that Vasquez was back in Kinsley. When Starks asked Robin if she was frightened, she said that she was not afraid of Vasquez unless he had been drinking. She said there had been a shotgun in her house, which she had taken to Dinkel. Dinkel had locked the shotgun in a safe in his shop so that it was not in her house while Vasquez was in town. Robin also told Starks that she had sought a restraining order against Vasquez and would file a petition for a protection from abuse (PFA) order on the following Monday.

Later in the afternoon on December 11, Starks was called to Dinkel's shop, where Dinkel and Robin gave him a handwritten letter from defendant that had been left on the doorstep. The letter said that Vasquez did not want to 'beat anyone' and that he wished Dinkel would stay away so that Vasquez and Robin could work out their problems. Dinkel and Robin also gave Starks the shotgun and a Smith & Wesson .357 handgun. Robin told Starks that Vazquez had brought the handgun into their home several months earlier and would not tell her where he had gotten it. The shotgun belonged to Ron Sebes, who had also kept a Smith and Wesson .357 in his pickup truck until September 1998, when he reported it stolen.

Still later the same afternoon, Starks spoke to Vasquez. Starks told Vasquez that the police had the shotgun, and that Vasquez was not permitted to possess a firearm because of an earlier domestic battery case and because of his immigration status. Starks told Vasquez that the police were going to get the Immigration and Naturalization Service (INS) 'involved.' He also told Vasquez that Robin had a restraining order against him; that she was filing for divorce; that she was happy with Dinkel; and that Vasquez needed to leave her alone.

Late the evening of December 11, Vasquez told his sister that he needed to 'talk to Robin.' He gave his sister a hug, which he did not normally do, and walked from her house to Robin's. He did not come back that night, and the bodies of Robin, Franks, and Dinkel were found the next morning.

[…]

Mike Sebes, who had reported that his 9 mm Firestar was missing when he look for it after learning of the murders, testified that, in the first few days of December, Vasquez had called him looking for work. After completing a day-long job, Vasquez borrowed Mike's truck. At the time, Vasquez was aware that Mike kept the gun behind the seat in the truck.

Police recovered a box of 9 mm ammunition from Vasquez' sister's house; eight rounds were missing from it.

Over a defense objection, the State also introduced evidence that on July 17 or 18, 1998, the police had responded to a hang-up 911 call from the Vasquez home. According to responding officers Stark and Tammy Gross, Robin told them that Vasquez, who had been drinking, shoved her, threw her around, and bit her hard…. The police arrested Vasquez for domestic battery and disorderly conduct….

Several of Robin's close friends testified to remarks Robin had made about her turbulent relationship with Vasquez. Defendant made a continuing hearsay objection to this testimony.

[A co-worker] testified about a letter from Vasquez that Robin had shown her. In the letter, Vasquez stated that he did not want Robin to divorce him and that life would not be worth living if he was not married to her. [The witness] also testified that, at work on December 11, 1998, Robin received a phone call from Vasquez, who wanted her to meet him. Robin suggested a public meeting place. [The witness] testified that, although she did not hear Vasquez' side of the conversation, she heard Robin tell him, "This isn't Mexico, and you cannot get a gun and shoot people." After the call, Robin repeated to [the witness] what she had told Vasquez.

Robin's friend and [another] former co-worker [] testified that she talked to Robin on December 11, 1998, and Robin mentioned that defendant was back in town. [The witness] asked Robin if Vasquez knew about Dinkel. Robin said yes

and said that Vasquez had said he "'was going to shoot [Dinkel] in the head.'"

*State v. Vasquez*, 194 P.3d 563, 568-572 (Kan. 2008).

## Discussion

The amended and supplemental petitions assert claims of actual innocence and advance several theories concerning who else could have committed the crimes of which petitioner was convicted.

Petitioner did not present that specific claim to the state courts, but he sought relief in the state courts on the grounds that he received ineffective assistance from his trial defense counsel due to his failure to investigate certain evidence and from his post-conviction counsel for failure to adequately challenge defense counsel's performance.

Petitioner asserted for the first time at a *Van Cleave* hearing[1] that his trial defense counsel failed to introduce evidence related to unidentified fingerprints from the crime scene and Dinkel's truck, and to unidentified shoe prints at the crime scene. He testified that he discovered the documents related to this evidence in his case file.

At the post-conviction hearing, the prosecutor testified that to the best of his knowledge, all fingerprint evidence was tested and turned over to petitioner's defense counsel. The trial court, however, recalled that a few days before trial was to begin, defense counsel advised the court that a private investigator hired by the defense had not completed all assigned work. Counsel advised petitioner of that failure, but after discussion, they agreed that some of the tasks were not of significance and others could be performed by counsel.

---

[1] *See State v. Van Cleave*, 716 P.2d 580 (Kan. 1986)(where appellate counsel in a criminal matter seeks to present a claim of ineffective assistance of counsel and the issue has not been presented to the trial court, the defendant may request remand of the case to the trial court for a determination of the claim).

The court recalled that under direct questioning, petitioner chose to proceed to trial despite the state of the investigator's work. *Vasquez*, 331 P.3d 833(Table), 2014 WL 4080025 *6.

The trial court found that defense counsel had advised petitioner of the status of the pretrial investigation, that petitioner's claims were speculative, that there was no showing that counsel had failed to develop facts upon which a trial strategy could be based, and that petitioner had failed to show that any errors by counsel had prejudiced the defense case or undermined the fairness of the proceedings. *Id*. The Kansas Court of Appeals affirmed the denial of relief.

Likewise, the Kansas courts determined that petitioner's post-conviction counsel provided effective assistance. Post-conviction counsel argued that defense counsel was deficient due to the inadequate investigation but did not call counsel to testify because petitioner had elected to proceed to trial rather than seek a continuance to allow the completion of work assigned to the investigator. The Kansas Court of Appeals found that neither the performance of petitioner's defense counsel nor that of his post-conviction counsel had resulted in the loss of any meritorious claim or had resulted in prejudice.

Petitioner now claims the murders were actually committed by Mark Frame, the Edwards County Attorney who assisted in his prosecution; and Curtis Starks, a Kinsley police officer. He also claims that Rodolfo Aranda and Marcos Salgado[2] should be investigated. However,

---

[2] Information submitted by the petitioner includes a report that states that Michael Sebes' Fire Star 9mm handgun was found in El Paso, Texas in 2002 after two individuals, Aranda and Salgado, were captured there following a robbery. The National Crime Information Center (NCIC) later identified the gun as the murder weapon in the killings of Robin Vasquez, Thomas Dinkel, and Howard Franks. However, at the time it was recovered in Texas, the gun was considered a "street gun" which could not be linked to an owner. *See* Doc. #11, pp. 5-6 and 13.

petitioner must support his claims of actual innocence "with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar … or … expiration of the statute of limitations." *McQuiggin v. Perkins*, ___ U.S. ___, 133 S.Ct. 1924, 1928 (2013). Such new evidence "must be sufficient to show that it is more likely than not that no reasonable juror would have convicted the petitioner in the light of the new evidence." *Frost v. Pryor*, 749 F.3d 1212, 1231-32 (10th Cir. 2014)(internal citations and quotation marks omitted).

Finally, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *accord Isbil v. Workman*, 62 Fed.Appx. 863, 864-65 (10th Cir. 2003)(stating claim of actual innocence without allegation of independent constitutional violation in criminal case did not state a claim for habeas corpus relief under *Herrera*).

The Court has studied the record and concludes petitioner's claims of actual innocence do not entitle him to relief. Petitioner's claims are speculative and fail to establish any ground on which a reasonable jury could find him innocent. The circumstantial evidence presented at trial showed that petitioner had the motive to commit the crimes, had spoken of his desire to injure Dinkel, had sought a firearm, had purchased ammunition, and had left his sister's home on

the night of the murders saying that he needed to talk to Robin. After the murders, Dinkel's truck was found in Mexico, the murder weapon was found in El Paso, Texas, and Dinkel's wallet was found in a ditch on the highway outside Kinsley. Petitioner was extradited from Mexico. Petitioner's bare claims that another person or persons committed the crimes are entirely unsupported, and the amended petition does not identify a constitutional violation that might support relief.

IT IS, THEREFORE, BY THE COURT ORDERED the consolidated petition for habeas corpus is denied.

IT IS FURTHER ORDERED petitioner's motions for order (Docs. #11, #12, #13, #14, and #15) are denied.

**IT IS SO ORDERED.**

DATED:  This 5th day of September, 2017, at Topeka, Kansas.

S/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge